Wilde, J.,
delivered the opinion of the Court.
The question of law arising in this case, and which is now to be determined, is, whether the evidence of the payment by Ellis was properly admitted; or, in other words, whether, after failure by the mortgagor to pay the amount due on the mortgage, and judgment recovered and possession received by the mortgagee, the payment of the principal, interest, and costs, does ipso facto defeat [ * 421 ] the estate of the mortgagee, *so that the mortgagor may lawfully enter, or maintain ejectment for the recovery of possession.—This is a question of considerable difficulty, and leads to the consideration of points, upon which learned judges and jurists have held different opinions. This difference of opinion has probably arisen in part from the peculiar nature of the contract of mortgage; but principally, I apprehend, from a disposition, in most of the judges of late years, to adopt the rules of equity, and *341 to combine them in practice, as far as possible, with the principles and rules of the common law.
The ancient doctrine of the common law, in respect to mortgages, was plain and well understood. By a conveyance, by way of mortgage in fee, all the mortgagor’s title passes to the mortgagee; subject, however, to be defeated by the performance of the condition. But if the condition be not strictly performed by the mortgagor, the estate of the mortgagee becomes absolute; no right remaining to the mortgagor afterwards to redeem. “ If he” (the mortgagor), says Littleton, <§> 332, “ doth not pay, then the land, which is put in pledge upon condition for the payment of the money, is taken from him forever, and so dead to him upon condition, &c. And if he doth pay the money, then the pledge is dead as to the mortgagee.” “In case of failure” (to perform the condition), says Blackstone, “ the mortgagee may enter and take possession without any possibility at law of being afterwards evicted by the mortgagor.” 2 Comm. 158. So that a mortgage, although a pledge at first, becomes an absolute interest, unless redeemed at the time limited for the payment of the money, or other performance of the condition. If it be not literally performed by payment of the money at the day, the estate becomes subject to the dower of the wife of the mortgagee, and to all other encumbrances by him; although the money should be afterwards paid, and the estate reconveyed to the mortgagor. Powell on Mortgages, 9, 10.
* To avoid the inconvenience and injustice to which [ * 422 ] the mortgagor might be thus exposed, it has been usual in England to substitute mortgages for a long term of years, for mortgages in fee; and this practice prevailed very generally, until the courts of equity interfered ; who held that the power of redemption was an equitable right, inherent in the land, and binding all persons, whether claiming in the per, that is, by the act of the mortgagee, as tenant in dower, by statute staple, elegit, &c.; or in the post, that is, by the act of the law, as tenant by the courtesy, and the lord by escheat.—Powell, 11.—Cro. Car. 191.—Hard. 465, 469.
But notwithstanding the courts of equity maintained this loctrine, extending the rights of the mortgagor, after the redemption of a mortgage, they agreed with the courts of common law, in considering that before redemption the legal estate was in the mortgagee. Thus, if a man mortgages land to A, and afterwards to B, who at the time had no notice of the mortgage to A, it has been held that B may purchase in a precedent mortgage, outstanding at law, although nothing be due upon it in equity, and thereby prevent A from redeeming, unless he will satisfy the mortgage to B. For B, by purchasing in the precedent encumbrance, obtains the *342 legal estate; and it is a rule of equity, not to disturb the legal title where there is a legal title and equity on one side, and equity only on the other. Powell, 479.—1 Chanc. Cases, 101, 35.—1 Vern. 187, 188.—2 Vern. 157.—2 Vent. 337.—Hard. 173.—3 Bac. Air. 649. —So if the mortgagor borrows more money of the mortgagee upon bond binding the heir, and dies, courts of equity will not permit the heir of the mortgagor to redeem, without paying the bond debt as well as that secured by the mortgage. 3 Bac. Air. 652.—2 Chanc. Cases, 164, 194, 247.—Vern. 245.—Because, say the courts of equity, where there is an estate subsisting in law, as there is in the mortgagee after forfeiture, equity will not destroy it, unless the party redeeming will satisfy all equitable demands. [*423] * But although the legal estate is absolute at law in the mortgagee after forfeiture, yet the courts of equity, after their jurisdiction became well established in England, thought that conscience and equity required them to break in upon the common law, and to grant relief by permitting the mortgagor, at any reasonable time, to redeem. Still, however, the courts of equity admitted the legal estate to be in the mortgagee ; but they considered him as the trustee of the mortgagor until a foreclosure; thereby turning the mortuum into a kind of vivum vadium. They, however, allowed the mortgagee to call upon the mortgagor to redeem presently, or in default thereof to be forever foreclosed. And they generally refused to interfere in favor of the mortgagor, after twenty years’ possession by the mortgagee. If there were no foreclosure, nor such length of possession by the mortgagee, the mortgagor was considered the true owner, a mortgage being considered as a mere security for the debt, even after forfeiture ; and of course the discharge of the debt was held to be a determination of the interest of the mortgagee, and of all claiming under him. 1 Vern. 361.—Powell, 141, 142.—Prec. Chanc. 99.—Bernard. 93.— 1 Ves. 361.
It cannot be denied, that these principles and rules of the courts of equity have had a favorable operation in the administration of justice, and have afforded relief where, by the strict principles of the common law, the mortgagor was without remedy. They are conformable to the spirit of the mortgage contract, and it is not surprising that they should have gained some footing in the courts of common law. It may be doubted, however, whether in some particulars they have not been adopted to an extent inconsistent with the established rules of the common law. In the case of Martin vs. Mowlin, 2 Burr. 978, Lord Mansfield is reported to have said, that “ a mortgage is a charge upon the land, and whatever would give the money, will carry the estate in the land along with *343 it, to every purpose. The estate in the land is the * same thing as the money due upon it. It will be liable [ * 424 ] to debts; it will go to executors; it will pass by a will not made and executed with the solemnities required by the statute of frauds. The assignment of the debt, or forgiving it, will draw the land after it, as a consequence; nay, it would do it, though the debt were forgiven only by parole; for the right to the land would follow, notwithstanding the statute of frauds.”
No' authorities are cited in support of these remarks, and it seems to me extremely difficult to reconcile some of them with well-established principles of law, or with the true intention of the statute of frauds. Judge Trowbridge was of opinion, that they were accompanied with some restrictions which the reporter omitted to notice; because he acknowledges, in his preface, that he did not always take down the restrictions with which the speaker might qualify a proposition, to guard against its being understood universally, or in too large a sense. See 8 Mass. Rep. 558. This appears to be probable ; for it is impossible, as it seems to me, to suppose that Lord Mansfield meant to assert that “ the estate in the land is the same thing as the money due upon it,” without some qualification of the expression. This would confound all our notions, and break down every distinction between real and personal estate; between a title in land and choses in action; between mortgages in fee and mortgages for a term; and between mortgages of land and mortgages of goods.
Probably Lord Mansfield intended to say nothing more than that the estate of the mortgagee is worth no more than the debt, and is dependent upon it; that the discharge of the debt, at the time stipulated for payment, would defeat the mortgagee’s estate; and even payment afterwards would have the same effect, by the aid of the Court of Chancery; or without such aid, by virtue of the statute of 7 Geo. II., c. 20, which provides that the mortgagee shall maintain no ejectment, after payment or tender by the mortgagor, of principal, interest and costs. All this would * be true, and in some measure justify the expression [*425 ] imputed to Lord Mansfield; which, without some such restriction or qualification, cannot, I think, be held for law.
Nor can it be true, as Judge Trowbridge has shown, by very cogent arguments, “ that the assignment of the debt will draw the land after it, as a consequence,” to every purpose. It can only be so by the aid of a court of equity. In a court of equity the debt is the principal, and the mortgage is the accessory. And it is there held that, as the mortgagee holds the estate in trust for the mortgagor, so, when the debt is assigned, he becomes a trustee for *344 the benefit of the person having an interest in the debt. Omne principóle trahit ad se accessorium. This, too, was one of the grounds suggested by Judge Spencer, for the opinion in the case of Green vs. Hart, 1 Johns. 580, in which it was held that the transfer of a note, secured by mortgage, being in writing, the mere delivery of the mortgage security was a sufficient assignment. It is true that Judge Spencer remarks, that “ mortgages are not now considered as conveyances of lands, within the statute of frauds.” I know that this opinion has prevailed in courts of equity; but I have not been able to find any decided case to support it at law; and it appears to me against the letter and intent of the statute.
But, however this may be, it can have but little bearing on the point in question. It is important only so far as it may show the nature and quality of an estate by mortgage.
The question now to be decided is, What is the remedy for the mortgagor, after payment of the debt, if the mortgagee, having entered for condition broken, refuses to relinquish the possession ? And this Court are all of opinion, that it is by a bill in equity, and that this is the only remedy. This was the doctrine held by the Court in the case of Hill vs. Payson & Al., 3 Mass. Rep. 560 ; and it has been frequently so ruled at nisi prius. It is a doctrine which is well supported by the principles of the common law, [ * 426 ] as I think I have shown; and it is strongly implied, *if not expressly declared, in all the statutes relating to the subject.
The first of these to be noticed is the provincial act of 9 Will. III. [ Vide Ancient Charters, &fc. 304] which provides, “ that every mortgagee, having received full satisfaction and payment of all such sum and sums of money, as are really due to him by such mortgage, shall, at the request of the mortgagor, cause such satisfaction and payment to be entered in the margin of the record of such mortgage in the register’s office, or shall sign and seal a discharge of the said mortgage, and release and quitclaim to the estate.” And in default thereof for ten days next after request in that behalf made, he is liable to make good all damages for want of such discharge or release, to be recovered by action or suit in any court of record. This act manifestly goes upon the supposition, that the legal estate remains in the mortgagee, notwithstanding payment; and that he may maintain his possession, to the damage of the mortgagor.
This law was revised in 1784 (1), and is still in force. It, however, provides no remedy, whereby the mortgagor can recover possession of the estate mortgaged. This was provided for soon *345 after, by the act of 10 Will. III. [Ancient Charters, fyc. 324], wherein it was enacted, that, in all cases where the mortgagee hath entered into, or by any ways or means hath obtained possession of the estate mortgaged, for default of the mortgagor’s paying the money, or otherwise performing the condition, the party aggrieved, or to whom the right or equity of redemption of any such estate does belong, may bring his suit for remedy and relief therein, by filing a bill, &c., in the Superior Court of Judicature, or the Court of Common Pleas, who are empowered and authorized to receive and hear every such case, and to enter judgment therein, agreeably to equity and good conscience, and to award execution accordingly.
By this act the mortgagor was required, in order to redeem, to pay or tender, not only the debt, but also * “ reasonable costs, and allowance for any .disburse- [ * 427 ] ments laid out on the lands or houses mortgaged, for the advancement and bettering of the same, over and above what the rents, profits, or improvements thereof made, shall amount to, upon a just computation thereof by the Court.” This act continued in force, until the statute of 1.798, c. 77, for giving remedies in equity, which agrees, in substance, with the provisions of the provincial act already noticed. The object of these laws was to define and limit the right of redemption, and to provide a remedy for recovering possession of the estate mortgaged, when the mortgagee, against equity and good conscience, should refuse to restore it.
The remedy thus provided is by a bill in equity; and the courts are directed, in such cases, to enter up judgment agreeably to equity and good conscience; and by the statute last referred to, they are authorized to adjudge and determine what shall be a rea sonable and equitable performance of the condition of the deed. If the mortgagee has made disbursements for repairs, &c., above the amount of the rents and profits, the Court is to make the com putation. The Court, also, is to judge of the evidence of payment, and may decide the case without the intervention of a jury; all which provisions are inconsistent with the forms of proceeding in real actions.
Thus has stood the law of Massachusetts for more than a century. And whatever doubts may remain as to the legal estate "of the mortgagee in certain cases, the remedy for the mortgagor seems to be sufficiently plain. It is an adequate and convenient remedy, and well adapted to the great end of all judicial proceedings, the doing of impartial justice to all parties. For while, on the one hand, it moderates the rigor of the common law for the benefit of the mortgagor, it compels him, on the other hand, to perform whatever *346 justice and equity may require, for the benefit of the mortgagee. It is as beneficial to the mortgagor as a suit at law, and [ * 428 ] may sometimes be more so; *for if the evidence of pay ment be doubtful, the mortgagee may be compelled to answer under oath to the fact.
It is certainly more beneficial to the mortgagee; for it compels the mortgagor, when he applies for equity, to do equity. If ejectment would lie for the mortgagor, upon payment of the debt, the mortgagee would have no remedy, to recover any disbursements made by him for repairs; for his right to demand these depends, either upon the statute, or the rules of equity. They are unknown to the common law, which considers the mortgagee as the absolute owner.
To this view of the subject it may be objected, that it enables the mortgagee, if he is so disposed', to vex and harass the mortgagor unreasonably. After receiving his debt, having no claim in equity and good conscience upon the land, but a mere legal estate, he may nevertheless expel the mortgagor; or he may bring a vexatious suit against him, and subject him to costs.
The answer to this objection is, that the law can never be expected wholly to prevent injustice. It is enough that it punishes the offender, when the public good requires it, and compels him to make satisfaction to the party injured. Now, by the provincial act first mentioned, and by the revised statute of 1784, the mortgagor would be entitled to a special action on the case, to recover his damages, if the mortgagee should expel him, after a demand by him according to the statute.
If this remedy, however, should not be found sufficient, it will be for the legislature to provide one more effectual. Perhaps an act similar to the act of 7 Geo. II., c. 20, might have a salutary operation. This act, as before remarked, disables the mortgagee to maintain ejectment, after payment, or tender of payment of debt, interest and costs. It also contains a provision for the security of the equitable rights of the mortgagee, and subsequent encumbrances.
Some other questions have been argued, which it is now unnecessary to decide. It is the opinion of the Court, [ * 429 ] * that the demandant is entitled to judgment for the lands, which were not included in the mortgages tp Cabot and Otis, and not for the other parcels demanded (2).

 Vide Stat. 1783, c. 37, § 6.

 [Vide Gray vs. Jenks & Al., 3 Mason, 520, and cases there cited.—Vase vs. Handy, 2 Greenl. 322.—Wade vs. Howard & Al., 11 Mass. 289.—Ed.]