## NORTON v. SOULE.

If a surety pays the money due from his principal, it is no extinguishment of the security, but he succeeds to all the rights of the creditor against the principal.

Thus where the principal had executed a mortgage to the creditor, conditioned for the payment of the debt *by him,* and the surety paid the debt, and took an assignment of the mortgage, it was holden that the surety might enter and hold the land in mortgage for the debt.

In a case stated by the parties, it appeared that they had both signed a joint and several note to one *Abbot,* for the proper debt of *Soule* only, *Norton* being in fact his surety, though not named in that character in the note ; that *Soule,* to secure the payment of the debt, mortgaged his land to *Abbot,* the deed to be void on *his* payment of the note ;—that *Abbot* on the same day indorsed the note to *Mr. Bond,* to whom *Soule* paid part of the debt ;—and that *Soule* being afterwards sued for the bal-

ance, was taken in execution and discharged upon taking the
poor debtor's oath.    After this, *Norton* agreed with *Bond* to pay
him the amount of his judgment, if he would assign that and
the execution to him, which was done accordingly ;—and hav-
ing also obtained of *Abbot* an assignment of the mortgage, he
now brought his writ of entry as assignee, to have possession of
the land, against *Soule*, who had always remained in possession,
no entry having been made for breach of the condition.    Here-
upon the general question was, whether the action could be
maintained ?

*Boutelle*, for the tenant, being called upon by the Court, re-
sisted the action on the ground that the debt was *paid* to *Abbot*
by *Bond* at the indorsement of the note ; and that the pledge
and the note being thus disunited, the lien on the land was gone.
But if not *thus paid*, yet it was fully discharged, by the pay-
ment made by *Norton* to *Bond* of the amount of the judgment
recovered ; and this being made by one joint debtor enures to
the benefit of all.    After this, the remedy of the plaintiff was
only by an action for money laid out and expended.    2 *Saund.*
48, *a. note* 1.    *Hammett v. Wyman & al.* 9 *Mass.* 138.    *Brack-
ett v. Winslow,* 17 *Mass.* 153.    *Tuckerman v. Newhall,* 17 *Mass.*
581.

And this payment, though made after breach of the condi-
tion, yet being before entry by the mortgagee, may be shewn in
bar of any action upon the mortgage.    If not, the tenant might
instantly re-possess himself of the land by bill in equity.    But
to turn him round to this remedy would be to encourage circui-
ty of action, which is against the policy of the law.    The rem-
edy by bill in equity is useful only where the mortgagee has
made repairs, or has received rents and profits of which an ac-
count is to be taken.    *Perkins & al. v. Pitts,* 11 *Mass.* 134.
*Gould v. Newman,* 6 *Mass.* 239.    *Inches v. Leonard & al.* 12
*Mass.* 379.    *Pomeroy v. Winship,* 12 *Mass.* 518.

*H. Belcher,* for the plaintiff, replied that *Norton* being no par-
ty to the judgment, the payment to *Bond* could not operate, *pro-
prio vigore,* to discharge it ; but must be taken according to the
intendment of the parties, as expressed in the deed and in the

instrument of assignment to *Norton.* This intent manifestly was that the land should stand pledged for the debt, until payment *by Soule the real debtor,* and that *Norton* should stand in the place of the mortgagee. *Parsons v. Welles,* 17 *Mass.* 419. Indeed as it respected the *costs* of the judgment *Norton* could in no event be liable, but was strictly an assignee of the security against *Soule. Allen v. Holden,* 9 *Mass.* 133.

MELLEN C. J. delivered the judgment of the Court at the ensuing term in *Penobscot,* as follows.

On the ground of equity and justice the demandant, upon the facts before us, seems clearly entitled to judgment.—He is a mere surety for the tenant, seeking to obtain indemnity by means of an arrangement made for the very purpose of securing it to him; and his claim is resisted by the man who has been befriended by him, and upon the principle that the above-mentioned arrangement ought to have and must have, according to strict law, an operation directly contrary to that which was intended.

As *Norton* was only the surety of *Soule* on the note made to *Abbot,* it is reasonable to presume that he the more readily became such in consequence of the collateral security given to *Abbot* by the mortgage deed of *Soule;* because, as *Norton* was no party to *that* instrument, he probably contemplated, what was afterwards effected, that is, an assignment of the mortgage to him by *Abbot* for his eventual indemnity; and if *Abbot,* at the same time, had assigned to him the *personal* security also, no case has been shewn which decides that *such* a mode of indemnity would have been ineffectual.

In England questions relating to suretyship and to rights growing out of it, were formerly settled in the Court of Chancery; and for many purposes it is now necessary to resort to that Court for effectual security to a surety; such as to obtain an assignment of judgments, liens, &c.—The same course of proceeding is pursued in the Court of Chancery in New-York.—See *Clason & al. v. Morris,* 10 *Johns.* 524.--It has however, for a long time been the practice in England for *one* surety to resort to the Courts of common law, to compel a *co-surety* to contribute; and this is done by an action of *assumpsit.* Such also is the law with us; and as we have no Court of Chancery, we

certainly should not be rigid in the application of *common law principles*, when such application will produce manifest injustice ; but rather give effect to *equitable* principles, where the common law does not clearly forbid it.—In the abovementioned case of *Clason & al. v. Morris & al.* which was a chancery proceeding, the facts were these :—*Clason* and *Stanly* indorsed a note, (given by *Sands* and payable to them or order) to *Low.*—In thus indorsing the note, *Clason* and *Stanly* acted merely as the friends and sureties of *Sands.*—*Low* obtained a judgment against *Sands*, and afterwards another judgment against *Clason* and *Stanly,* who paid the amount of the debt to *Low* and took an assignment of the judgment against *Sands ;* and it was held that they stood in the place of *Low,* and might avail themselves of the judgment to recover the money paid by them for *Sands.*

The defence in the present action is that the debt, to secure which the mortgage deed declared on was given, has been paid. —The condition of the deed is that the debt shall be paid by *Soule ;* but it appears that he has only paid a part of it ; and that the residue has been paid by *Norton,* the demandant, to *Bond,* to whom *Abbot* had previously indorsed the note ; and this was *after* the condition of the mortgage was broken.—Still it is contended that the payment thus made by *Norton,* was in due season, inasmuch as there has never been any entry to foreclose, made either by *Abbot* or the demandant as assignee of the mortgage ; and that such payment must be considered as having *satisfied* and *extinguished* the original debt, and of course extinguished the *mortgage* and completely defeated the estate now claimed in virtue of it.

As to the *first* proposition it would seem that, if the payment by *Norton* to *Bond* of the amount of his judgment against *Soule,* was an effectual satisfaction and extinguishment of the debt, it was made in due season, and amounts to a good defence in this action ; according to the opinion intimated in the case of *Winship v. Pomeroy,* 12 *Mass.* 514. and yet this principle appears to be in some manner overruled by the case of *Parsons v. Welles,* 17 *Mass.* 419. though in this *last* case, the mortgagee had entered and taken possession.—The *only* question, then remaining, is, whether the payment of *Bond's* judgment against

Norton *v.* Soule.

*Soule,* in the peculiar circumstances of this case, has extinguish-
ed the debt secured originally by the joint and several note of
*Norton* and *Soule,* and by *Soule's* mortgage.—The cases which
have been cited in support of the affirmative of the question,
differ, in some particulars which we deem important, from the
case under consideration,—In *Hammett v. Wyman,* the debt was
due from *Hammett and Jones :* They were both *principal debt-
ors.* Again, in that case they were both *judgment debtors ;*
*Peterson,* the creditor, having obtained judgment and execution
against them *both.*—*Tuckerman v. Newhall,* has no immediate
bearing on the present case ; it only decides on the effect of a
release to *one* of *two* joint and several debtors,—In *Brackett v.*
*Winslow* a *joint* judgment had been recovered against *two*
*debtors ;* they appear to have both been *principals ;* neither
was *surety* for the other. In the present case it appears that
*Norton* was never sued by *Bond ;* he was not a purchaser of a
*judgment against himself ;* (as in *Hammett v. Wyman* and *Bracket*
*v. Winslow* was *virtually* the case :) but a judgment against
*Soule only.* A *part* of the judgment so assigned by *Bond* to
*Norton* consisted of the *costs of the action ;* and for these *costs*
*Bond* had no claim on *Norton.* Indeed no case has been cited
or found which goes the length of establishing the principle
that a payment by a *surety,* in circumstances like those before
us, must necessarily have the effect to extinguish the original
demand, when the arrangement was made for the express pur-
pose of affording protection to the demandant from all danger
in consequence of his suretyship. It is by no means a new
principle, that a contract may receive a construction, by means
of which it may have a legal operation, though in a form dif-
ferent from that which the parties expressed. Thus a deed
which cannot take effect as a conveyance of *one* kind, may be
valid and effectual as one of *another* kind. This is a common
principle, adopted for the purpose of giving substantial effect
to the intentions of all concerned. In the case of *Allen v.*
*Holden,* cited by the demandant's counsel the Court seem to have
gone, in some measure, on this ground. *Allen* obtained judg-
ment against *Holden ;*—sued execution and delivered it to
*Wyman* a deputy under *Bridge* the sheriff. *Wyman,* by his
omission to collect the contents of the execution, became liable

to *Allen* for his neglect. *Allen* sued the sheriff—and thereupon *Wyman* stepped forward and *paid to Allen the amount of his judgment against Holden,* and took an *assignment* of it, and then sued *Holden* in an action of debt on this *satisfied judgment* in *Allen's* name. The Court sustained the action. It is true that in giving the opinion, the Chief Justice considers the sum paid by *Wyman* as *damages for his neglect;* but, in truth he paid neither more nor less than the full amount of the judgment. The Court, by considering the sum paid as *damages,* and looking to the *object* of *Wyman* and *Allen* in that transaction, decided that, for the purpose of maintaining the action for the benefit of *Wyman,* the judgment might be thus viewed as unsatisfied. This seems to be a fair inference from the facts in that case. Surely if such an action was maintainable in favour or rather for the express use of a person who had been guilty of official neglect, it would seem that a fair and innocent surety—who has done no wrong—should find equal protection in a Court of common law, when we have no Court of chancery which can furnish specific guards and securities, as is done in England and in those of the United States where such a Court exists.

The case of *Popkin v. Bumstead,* 8 *Mass.* 491. is a strong one to shew how far a Court will go in giving a construction to the acts of parties, so as to effectuate their fair intentions and preserve their rights. *Mary Popkin* commenced her action of Dower against *Bumstead.* By the pleadings in the case it appeared that the demandant's husband had mortgaged the estate, whereof Dower was claimed, to *Capen;* and the demandant by the deed of mortgage *released to Capen her Dower in the premises*—after the husband's death, his administrator sold the equity of redemption and the tenant purchased it; and then paid to *Capen* the whole sum due on the mortgage; and he thereupon acknowledged satisfaction on the margin of the record of said mortgage deed. On these facts it was contended by the demandant, that though her release barred her as respected the *mortgage,* and *so long* as the mortgage deed remained in force; yet as the conveyance by her husband was *conditional,* so was the *release of her Dower;*—and as the debt was fully paid, and the mortgage discharged, such discharge restored all concerned to their *original rights* and of course

restored her to her right of Dower. But the Court were of a different opinion, and said—" It would be singular if, when the " tenant paid the money due on the mortgage, and *supposed* " that he had *thus* perfected his title by extinguishing the only " incumbrance he knew to exist upon it, he should *by that very* " *act* revive the claim of the demandant, which she had before " solemnly renounced under hand and seal. When the tenant " purchased the equity of redemption, it belonged to him to " pay the money due on the mortgage, and thus rid the estate " of incumbrance. Having all the equitable interest in him- " self, when he paid the money due on the mortgage, the *legal* " *estate followed the equitable interest* and he became seized of " the whole in fee simple. If this *were not* the plain legal ope- " ration of the transaction, the law would *construe* the *discharge* " of the mortgage by the mortgagee, to be a *release of the legal* " *estate by him to the tenant,* rather than such a mischief should " follow."

By the condition of the deed, *Soule* was bound to pay the *whole note.* He has never done it. In *strictness* he has broken the condition of the mortgage and stands liable to the usual conditional judgment in cases of mortgage ;—and as we do not find any decided case which forbids our giving to the payment of *Bond's* judgment by *Norton* the *intended effect* of it, for the indemnity of an honest surety ; and considering also the liber- ality of construction in the cases on which we have been com- menting, we are disposed to *give* it that effect. Accordingly there must be judgment for the demandant for possession of the demanded premises, unless within two months, the tenant pay the sum of eighty-five dollars and interest thereon from the time of entering up this judgment.