The opinion of the Court was delivered at this term, by
Wilde J.
Whatever doubts may exist as to some questions raised on this statement of facts, certain points appear sufficiently clear, and are so decisive of the merits of the case, as to render' the examination of more doubtful matter unnecessary.
The demandant claims title on two grounds. 1. By virtue of an assignment of the second mortgage. 2. By the sheriff’s sale of the equity of redemption of the second mortgage.
On one or both of these grounds his counsel contend that he has a good right to recover in this action ; or if not, that he is entitled to a bill in equity, he having duly tendered the money due to the tenant, who was the purchaser of the equity of redeeming the first mortgage, and who has since obtained the title of the first mortgagee to the demanded premises.
From the principles laid down in the case of Parsons v. Welles et. al., 17 Mass. Rep. 419, it is clear that the demand-ant cannot maintain ejectment, the legal estate being in the ten ant, and that his only remedy, if he has any, is by a bill in equity. And the parties agree, that if the Court should be of opinion that this is the proper remedy, it may be substituted for the present action.
Considering the case, then, as depending on the rules and principles of equity, we are first to determine whether the plaintiff is entitled to redeem by virtue of the assignment of the second mortgage. It is objected, that the second mortgagee, after the sale of the equity to the tenant, had no such right, and therefore could assign none ; and that if he had any such right, it was not by law assignable.
He had no right to redeem, it is said, because, first, he took nothing by the mortgage ; and secondly, not being the execution debtor, he had no right to redeem, whatever other right he might have acquired by the mortgage. But the equity of redemption certainly passed by the second mortgage ; and by the assignment also, unless the sheriff’s sale to the tenant prevented. The attachment did not change the estate of the debtor, or take away his power of alienation, and the creditor acquired no property thereby; he had only a 1 en ; and the *499 debtor might legally convey the property subject to the lien. This 1 en the purchaser might discharge by payment of the debt before execution executed, or he might afterwards redeem the estate, if it were by law redeemable.
But it has been argued that nothing passed by the second mortgage, because the tenant’s title by law relates back to the time of attachment, which was prior to the mortgage, and therefore the debtor had no estate to convey. This position we think cannot be maintained, for if it could, it would follow that the tenant might maintain an action for any trespass committed in the intervening time between the attachment and the sale, which clearly he cannot do. We consider, therefore, the tenant’s title as commencing at the time of the sale. This point, however, is not very material, because the attachment constituted a lien on the land, which would have defeated the title under thé second mortgage, but for the right of redemption reserved to the debtor by the statute.
The question, then, is, whether this is a mere personal right, or a right transmissible and assignable. According to the literal construction of the statute, the debtor alone can redeem, yet it is hard to believe that so strict a construction can be conformable to the intention of the legislature ; for this would not only shut out assignees from the benefit of the provision, but also executors, administrators and heirs ; which would be in a high degree unreasonable. If the right reserved to the debtor was an important right to him, and the legislature certainly so considered it, it was equally important to his heirs and others holding the estate under him. We must therefore suppose that the legislature intended to extend the provision to all those who might be injured by the sale of the estate for an inadequate price. But whether the statute will admit of this construction or not is immaterial, provided the right reserved to the debtor is by law assignable.
It is now well settled, that a possibility coupled with an in terest is assignable. 3D. & E. 88 ; Shep. Touch. 239. Thus, a contingent interest in lands, before the contingency happens on which the estate is to vest, may be granted or assigned. So a man may grant that which he hath potentially, though n't actually. Bac. Abr. Grant, D. 3 ; Grantham v. *500 Hawley, Hob. 132 ; 2 Roll. Abr. 47, 8. As if a person grants ah the tithe wool which he shall have, such a year, the grant is good in its creation, though it may happen that he shall have no tithe wool in that year. The right, however, assigned in this case more resembles the equity of redeeming a mortgage ; it was an existing right of redeeming the estate sold, not depending on a contingency, which might or might not happen ; and it was a valuable right secured by the statute. No case has been found to show that such a right is not assignable, nor can I perceive any good reason why it should not be. A right to redeem an equity may be assigned, as well as a right to redeem the legal estate. For a man may mortgage his lands by successive mortgages without limitation, and the puisne mortgagee will be entitled to redeem, however remote his title may be from the legal estate.
The case of Kelly et ux. v. Beers has been cited as an authority against the doctrine now laid down ; but the question, whether the right of a debtor to redeem after the sale of an equity was assignable or not, was not considered by the Court in that case. All that was there decided was, that such a right was not attachable or liable to be taken and sold on execution. And this question depended on the construction of certain statutes, which are not applicable to the question ol assignment.[1]
But if it were admitted that the assignment is not valid in law, it is clearly good in equity ; and it is equally clear that the assignee may maintain a suit in a court of equity in his own name. All the authorities agree that choses in action are assignable in equity. The doctrine of the common law on this point, for the prevention of maintenance, has never been adopted by courts of equity, and has been almost explained away by courts of law, it remaining now only an objection to the form of action.
• Deciding this case, therefore, as a court of equity, we can have no doubt of the validity of the assignment, and that, if the *501 tend ;r was made in season, the plaintiff may sustain a bill to redeem in his own name.
As to the question of the tender and the computation of time, there are many conflicting cases, which it is impossible to reconcile. As Lord Mansfield says, in the case of Pugh v. The Duke of Leeds, Cowp. 719, “ they are yes and no, and a medium between them.” Yet there are some principles which appear to be well settled, and which will serve as guides to the decision which it behaves us to pronounce on this point.
The first I shall mention is, that words are generally to be construed according to their legal sense or ordinary import ; and, if this be doubtful, the intention of the parties is to govern in cases of contract, and that of -the legislature when the question relates to the construction of a statute. If this intention is doubtful, such a construction is to be adopted, if the words will admit of it, as will save an estate, rather than create a for feiture.
Another principle appears to be well settled, viz. that the words “ from the date” and “ from the day of the date,” when used in a lease to designate the commencement of a term, have precisely the same meaning. This has been denied in some old cases, but these cases have been overruled, and the principle has been long established. It is laid down by Lord Coke, in his Commentary on Littleton, (Co. Lit. 46 b,) and by Lord Mansfield, in the case of Pugh v. The Duke of Leeds, in which he reviews all the cases on this point. It is also in strict conformity to the legal sense of the words. The date of a lease or other deed is not the hour or minute when the lease or deed was executed, but a memorandum of the day when the deed was delivered. This day in a legal sense is an indivisible point of time, there being no fraction of a day. Cowp. 720. On this old maxim of law, I infer that the words, “ time of executing the deed,” used in the statute, mean in legal acceptation the day of delivery, which is the same as “ the date,” or “ the day of the date.”
If these principles are correct, then I apprehend the weight of authority is most decidedly in favor of excluding the day in which the deed was executed. Before the case of Pugh v. The Duke of Leeds, all the cases agree that the words, *502 “ from the day of the date,” are words of exclusion. So plain was this meaning thought to be, that leases depending on this rule of construction were uniformly declared void, against the manifest intention of the parties. Of this doctrine, thus applied, Lord Mansfield very justly complains, not, however, on the ground that the general meaning of the words had been misunderstood, but because the plain intention of the parties to the contract had been disregarded. All that was decided in that case was, that “ from the day of the date” might include the day, if such was the clear intention of the contracting parties ; and not that such was the usual signification of the words. I think, therefore, we are warranted by the authorities to say, that when time is to be computed from or after the day of a given date, the day is to be excluded in the computation.[1] And that this rule of construction is never to be rejected, unless it appears that a different computation was intended. So, also, if we consider the question independent of the authorities, it seems to me impossible to raise a doubt. No moment of time can be said to be after a given day, until that day has expired.
As to the rule for computing time from any act done, which is laid down in several cases, and principally relied upon by the defendant’s counsel, it appears to me to be liable to several objections, admitting that it is applicable to this case.
1. In the first place, it is opposed to the maxim already noticed, that there is no fraction of a day. If a day is considered as an indivisible point of time, there can be no distinction between a computation from an act done, and a computation from the day in which the act was done. I admit that this maxim is a fiction of law, and that when it is material to dis tinguish, the truth may be shown ; for a fiction of law, introduced for the sake of convenience and justice, ought never to be allowed to work a wrong. Thus, when it is necessary to determine the priority'of two attachments, the precise time of each attachment may be shown ; and so in many other cases But this is only permitted for the furtherance of justice.
*503 2. But if the precise time when an act was done might be shown, it would ne no argument for supporting the rule ; because, if the maxim or fiction of law be disregarded, there is no reason why the termination, as well as the commencement of a term, should not be shown, so that the term might be computed with mathematical certainty. It is said that the deed in this case was executed after sunset on the 6th of November, 1820, and that the tender was made before sunset on the 6th of November, 1821 ; so that in fact the tender was made within a year from the time of executing the deed ; yet the defendant would" resort to a fiction of law to prevent the plaintiff from showing the fact, or availing himself of the benefit of it, at the same time relying on a rule in opposition to this same fiction.
3. Cases may be supposed in respect to which the application of the rule would be absurd. For instance, if a day only were allowed the debtor to redeem, after an act done, and the act were done the last moment of the day, or even after sunset, the debtor could make no lawful tender at any time, and his right of redemption would be defeated by construction.
These are some of the objections to the rule in question, which incline us not to adopt it in this case. We do not con sider it as a well settled rule of law of binding authority. The decided cases are both ways. The rule seems to be founded on a distinction which has been long since exploded. It is said that if a lease be made to commence a confectione, which is an act done, the day of the date shall be included ; other wise, if it commences a die confectionis, or a die datüs. 1 Ld. Raym. 280 ; Co. Lit. 46 b. This subtlety was resorted to for the purpose of saving leases from the objection that they commenced in futuro; and thus the supposed rule was probably introduced. Most of the cases in which it has been adopted were such as to require the most favorable construction in conformity to it; and this reason is given for its adoption in the case of The King v. Adderley. And as many cases since decided cannot be reconciled with the rule, we must consider it as of doubtful authority, and as opposed to the justice of this case, and to the statute providing for the redemption of equities sold on execution.
Upon the whole, therefore, we are of opinion, that the plain *504 tiff, as assignee of the second mortgage, was entitled to redeem, and that the tender was seasonably made.' This being the opinion of the Court, it is unnecessary to consider the validity of the attachment ‘ under which also he claims a right to recover. Let a bill in equity be filed. '

 After the sale on execution of an equity of redemption, the mortgagor has an interest remaining, which he may mortgage, and his right of redeeming this second mortgage is assignable and may be attached. Reed v. Bigelow, 5 Pick. 281. See also Clark v. Austin, 2 Pick. 528.

 Sims v, Hampton, 1 Serg. & R. 411; Rand v. Rand, 3 N. Hamp. R. 267; Windsor v. China, 4 Greenl. 304; Pease v. Norton, 6 Greenl. 233. See Wheeler v. Bent, 4 Pick. 167; State v. Jackson, 1 Southard, 323; Priest v. Tarlton, 3 N. Hamp. R. 93.