## CALL, *Petitioner for partition vs.* BARKER *& als.*

A tenant in common, in possession, can maintain process for partition, under the provisions of *stat.* of 1821, *ch.* 37, *sec.* 2, though he be only an owner of an equity of redemption. *Aliter*, where the mortgagee has entered for condition broken.

So one interested in an estate, though out of possession, if he have a right of entry, may maintain this process.

Monuments, named in a deed, control courses and distances.

THIS was a petition for partition, filed at the *June* term of this Court, 1833, in which the petitioner alleged that he was seised in fee simple and as tenant in common, of an undivided half part of a tract of land in *Bangor*, bounded as follows : Beginning at a stake and stone on *Maine* street, thence running south 33° 30′ west, 32 rods to the line of lot No. 8, thence north 45° west, 42 rods, thence north 33° 30′ east, 32 rods, thence south 45° east, 42 rods to the first bound ; that he held said tract in common with persons unknown to the petitioner, and prayed partition thereof.

*Barker*, one of the respondents, alleged in his plea, that he was sole seised of the northeasterly half of said tract, separated from the southwesterly half thereof, by a line drawn from the middle of the end of said tract, on the county road or *Maine* street, northwest to the middle of the opposite end of said tract ; and traversed the seizin of the petitioner, as to said northeasterly half ; and thereupon issue was joined.

Call, Petitioner for partition *v.* Barker & als.

*Howe* and *Pope,* the other respondents, alleged that they were sole seised of the residue of said tract, to wit, the southwesterly half thereof; traversed the seizin of the petitioner as to said southwesterly half, and thereupon issue was joined with them.

The petitioner, to support these issues on his part, introduced a deed, dated *June* 28, 1803, conveying, for a consideration of $400, the said tract of which partition was claimed, to the petitioner and said *Barker,* as tenants in common. The southwesterly line of said tract, was, in this deed, described as running from the county road on *William Hammond's* line, to a stake and stone, one rod back of a small stream, back of the old county road.

The respondents, to maintain the issues on their part, introduced a deed, dated *Sept.* 14, 1812, from the petitioner, to *Henry Rice,* conveying in fee, and in mortgage, lot numbered 100 in *Bangor,* and one undivided sixth part of the premises of which partition is claimed, securing the payment of two notes of even date, each for $275, payable with interest, one in nine, the other in twelve months.

Also a deed from the petitioner, to one *James Thom,* dated *Feb.* 12, 1813, purporting to convey in fee, and in mortgage, and with the usual covenants of seizin, and warranty, one undivided third part of a certain lot of land, situate in *Bangor,* containing eight acres more or less, bounded as follows ; beginning at a post on the county road leading from *Kenduskeag* bridge to *Hampden;* thence running southwesterly on said road thirty-two rods to land owned by *Zadoc Davis,* then north 48°, west, fifty rods to a stake one rod beyond a small stream ; thence northeasterly parellel with the road, 32 rods to a stake ; thence south 42°, east, fifty rods to the bound first mentioned ; securing payment of a judgment, on which was then due from said *Call,* $381,50, on or before *Feb.* 12, 1814.

On the *9th* of *April,* 1814, *Rice,* by his attorney, *Samuel E. Dutton, Esq.* duly appointed and authorised, and having with him said mortgage deed from *Call* to *Rice,* entered upon the lot of land, described in said mortgage deed, and of which partition was claimed, in presence of two witnesses, and took possession of the same, for the purpose, as was then stated by said attorney,

in the presence and hearing of said witnesses, of foreclosing said *Call's* equity of redemption in said mortgage.

*Rice* conveyed his interest in said undivided sixth part of said lot to *Zadoc Davis,* by deed, dated *Feb.* 5, 1822.

On the 24*th* of *May,* 1822, *James Thom,* by his attorney, *Jacob Adams,* duly appointed and authorised, and having with him said mortgage deed from *Call* to *Thom,* entered upon the lot of land described in said mortgage deed to *Thom,* in presence of said *Davis* and three other witnesses, and took possession of the same, for the purpose, as was then stated by said attorney, in the presence and hearing of said witnesses, of foreclosing said *Call's* equity of redemption in said mortgage, and a certificate thereof, subscribed by said four witnesses, was then annexed to said mortgage deed.

On the back of said mortgage deed, by assignment dated *May* 13, 1823, said *Thom* conveyed to said *Zadoc Davis,* his interest in said mortgaged estate and judgment.

The premises, on the 9*th* of *April,* 1814, were unfenced and unoccupied, and continued so for four or five years afterwards. On the 24*th* of *May,* 1822, said *Davis,* having previously hauled a house on to the premises, then lived on and occupied a part thereof; and in 1828, *Davis* and *Barker* having, with the consent of the owners of the adjoining land, set down stone posts at the four corners of the tract of land of which partition is prayed, after a survey by deed of partition dated *Sept.* 10, 1828, between said *Davis* and several others then claiming under him, of one part, (all of whose titles to said mortgaged premises had subsequently been conveyed to said *Howe* and *Pope*) and said *Barker* of the other part, the same was divided in manner stated in the pleas. The parties to said indenture, thereby covenanting and agreeing each with the other, to hold in severalty ; the said *Barker* the said northeasterly half thereof; and the said *Davis* and others and their assigns the southwesterly half thereof; after which the respondents and the parties to said indenture had occupied, improved and fenced the same in severalty, in manner stipulated in said indenture.

It was agreed, that on the 17*th* of *August,* 1818, an auctioneer made sale of said estate, mortgaged to *Rice,* at public auction at

*Bangor,* by direction of *Rice's* attorney, and the same was bid off on a credit of two and four months, for one hundred and five dollars. Of this sale, previous notice was given by publication, three weeks successively, in a newspaper then printed in *Bangor,* the last publication being on the *6th* of *August,* 1818, and by posting advertisements thereof in *Bangor,* and the two adjoining towns, *Orono* and *Hampden.*

At the *November* term of the Supreme Judicial Court at *Boston,* in the year 1818, a verdict was returned for said *Rice* against *Call,* in an action there pending upon the two notes secured by said mortgage to *Rice,* for $463,12 debt. Previous to the trial, *Call* had taken depositions to be used therein, tending to shew, what he set up as a defence to said action, that the estate mortgaged to *Rice* was worth double the amount secured by the mortgage ; and that *Rice* having taken the land had thereby received full satisfaction for his debt. And after said trial, *Call* frequently acknowledged and complained that *Rice* had taken the land mortgaged, and that in said trial the amount allowed him was not its value, but only the proceeds of the sale aforesaid.

In 1826, an execution in favor of *Rice,* against *Call,* issued on a judgment recovered in *Cumberland* county, in 1823, for $575,85, the balance due on the judgment rendered in *Boston,* on said verdict, was settled by *Call* paying said *Rice,* in full therefor, $275.

No part of the judgment, secured by *Call's* mortgage to *Thom,* had been paid.

*Call's* residence was in *Bangor,* after 1812, except about two years residence in *Ohio,* between the years 1817 and 1820; and until 1834, his residence was within half a mile of the land in controversy, except as above.

There was no evidence, except as above, that the petitioner had notice of either of said alleged entries for foreclosure, or of said auction sale ; or that he was present at either, or that he had ever been in actual occupation of the mortgaged estate, after said two mortgages were given, said land being in 1812, and for some years afterwards, unfenced and unoccupied. *Davis* had lived on

and occupied the southwesterly half of said premises, after the 24th of May, 1822.

Upon this statement of facts, it was submitted to the Court to decide whether the petitioner could maintain his petition for partition of any part or all of the described premises; it being agreed that the Court might infer any facts which it would be competent for a jury to infer, and judgment was to be rendered according to the opinion of the Court.

*F. Allen* and *J. Appleton*, for the petitioner.

1. Partition may be had, though the petitioner be out of possession, if the right of entry remain. *Baylies & al.* v. *Bussey*, 5 *Greenl.* 157; *Brougham* v. *Clapp*, 5 *Cowan*, 298.

2. So partition may be had, not only of the fee but of any lesser portion of the fee. As a lessee for years, *Baring* v. *Nash*, 1 *V. & B.* 553; *Wells* v. *Slade*, 6 *Ves.* 498; *Mussey* v. *Sanborn*, 15 *Mass.* 155. So as to the owners of the use merely, *Mitchell* v. *Starbuck*, 10 *Mass.* 5. The interest of the owners of an equity is divisible: 7 *Johns. Ch. Rep.* 140; 17 *Ves.* 542; 1 *Hopk.* 505; 1 *Paige*, 469; *Colton* v. *Smith*, 11 *Pick.* 315.

3. There is a subsisting equity in the petitioner, no *notice* having been given to him of any entry to foreclose. An entry without notice is insufficient. *Pomeroy* v. *Winship*, 12 *Mass.* 520; *Scott* v. *McFarland*, 13 *Mass.* 313; *Thayer* v. *Smith*, 17 *Mass.* 431; *Gibson* v. *Crehore*, 5 *Pick.* 151; *Hadley et ux.* v. *Houghton*, 7 *Pick.* 29; 4 *Kent's Com.* 135, (2d ed.); *Greene* v. *Kemp*, 13 *Mass.* 519.

No notice can be *implied* from the possession, by hauling on a house and occupying it in 1822. Possession was not then taken in the presence of two witnesses, and with the avowed intention of foreclosing the mortgage. If it were otherwise, it is denied that *implied* notice is sufficient; the courts have never gone thus far.

But the petitioner is entitled to partition in the gore, if no farther. The parties must be bound by the language of their deeds. By these it appears that less was mortgaged in one than in the other, leaving the petitioner's title clear to the difference.

*Starrett*, for the respondents, cited the following authorities: *Hill* v. *Payson & al.* 3 *Mass.* 559; *Parsons* v. *Wells & als.* 17

*Mass.* 419; *Pomeroy* v. *Winship*, 12 *Mass.* 514; *Newhall &*
*al.* v. *Wright*, 3 *Mass.* 138; *Erskine* v. *Townsend*, 2 *Mass.*
493; 4 *Dane's Abr.* 185, 888; *Thayer* v. *Smith*, 17 *Mass.* 431;
3 *Johns. Ch. Cas.* 145; *Vose* v. *Handy*, 2 *Greenl.* 322; *Pur-*
*rington & al.* v. *Sedgley & al.* 4 *Greenl.* 213; *Cate* v. *Thayer*,
3 *Greenl.* 71.

WESTON C. J. — The respondents, admitting the original title
of the petitioner, as set forth in his petition, claim notwithstanding
to be sole seised, depending on the proof introduced by them,
that his title has been conveyed to others, under whom they hold.
The first inquiry which presents itself is, whether the deeds made
by the petitioner, cover all the land of which partition is prayed.
He was the owner of one half, in common and undivided. He
conveyed in fee, and in mortgage, one sixth of the whole, in
*September,* 1812, to *Henry Rice,* by which his moiety was di-
minished to one third.

In *February,* 1813, he conveyed also in fee, and in mortgage,
one undivided third of a tract of land described in his deed to
*James Thom.* If this tract is the same with that described in
the petition, after the execution of these deeds, his only remain-
ing interest was a right to redeem the land so conveyed. His
counsel contend, that his deed to *Thom,* does not cover a gore
on the northeasterly part of the land in controversy, two rods and
a quarter in width at the northerly end, and terminating in a point
at the southeasterly corner of the tract. If the land described in
the deed, to *Thom,* is to be located according to the courses there
given, the petitioner is right in this part of his claim. And these
courses must be pursued, unless a monument or monuments are
to be found, by which they may be controlled; for it is a settled
principle of law, that courses and distances yield to monuments.
Thus, if a line is to run in a certain course, a given number of
rods, from one stake or stone to another, if these can be found or
located, a strait line is to be drawn between them, although it
may vary both in course and distance, from the line given in the
deed.

There is no controversy as to the point of beginning, in the
deed to *Thom,* or as to the point on the county road, thirty-two

rods southwesterly therefrom, at which the first line terminates. The next line described, is to run north, forty-eight degrees west, fifty rods, to a stake one rod beyond a small stream. If that stake, or the point where it stood, can be found, the parties made it, and the law establishes it, as the termination of the second line. It does not appear from the case, that the stake referred to, is still in existence, nor is it expressly agreed where it stood; but as the court are to draw such inferences from the facts found, as it would be competent for a jury to do, it becomes important to inquire, whether from the facts, the location of the stake can be deduced. The east line and the southerly corners of the land, described in the deed to *Thom*, correspond with that described in the petition. The end lines of each are to extend thirty-two rods, and the side lines of both are parallel.

The deed of *June*, 1803, which the petitioner adduces to prove his title, describes his southwesterly line, as running from the county road, on *William Hammond's* line, to a stake and stone, one rod back of a small stream, back of the old county road. There are so many coincidences between the land set forth in the petition, as proved by the deed to him, and that described in the deed to *Thom*, that we have no hesitation in deciding, that a jury would be warranted in finding, that the stake one rod back of a small stream, back of the old county road, mentioned in the deed to the petitioner, is the same with the stake described, one rod beyond a small stream, in the deed to *Thom*. As the line there given run from the county road, " beyond," in that deed, has the same meaning with " back of," in the other. By this construction, the land conveyed to *Thom*, will be located, according to the petitioner's title, whereas by disregarding that, and adhering to the courses, there is conveyed to him a gore of land on the southwesterly side, which his grantor did not own, while a corresponding gore is reserved upon the opposite side, of a most inconvenient shape and form, if owned in severalty, and still more so, if owned in common with others. It is not found or pretended, that there ever existed more than one stake, set up as a corner in that direction. In the petition, that line is described, as running north, forty-five degrees west, and one set up at the end of fifty-rods, the distance given in the deed to *Thom*, would be

ten rods, instead of one, beyond the brook. In the deed of 1803, the same side is bounded on *Hammond's* line. As that deed is relied upon by the petitioner, *Hammond's* line must be understood to run the course given in the petition.

If the stake, referred to in both deeds, is the same, can the point where it stood be ascertained ? It was one rod, measuring north, forty-five degrees west, which coincides with *William Hammond's* line, from the point at the brook, where that line crossed. The course and distance from this point, which is a monument referred to, being given, the location of the stake can be fixed with great precision. By both deeds, the next line was to extend thirty-two rods, and there is no controversy about the course, which is parallel with the first line. The line in both deeds would then terminate at the same point. The closing line, by the deed to *Thom*, ran from that point to the point of beginning. But to effect this, the course given in that deed must be varied three degrees, as it was in the second line by the same rule, and upon the same principle. The result is, that both deeds from the petitioner embrace the gore, which he contends was reserved to himself.

Any person, interested with others in any lot, tract of land, or other real estate, may, by the second section of the act for the partition of lands, *statute* of 1821, *ch.* 37, have this process. And if a tenant in common in possession resorts to it, it may be no objection, on the part of the other co-tenants, that he is the owner only of an equity of redemption. A mortgagor in possession, is a tenant at will to the mortgagee. But after the latter has entered for condition broken, the mortgagor has at law no interest whatever in the estate. Before foreclosure, he may, upon tender of the money due, again entitle himself to the land, but if his right is resisted, his only remedy is by a bill in equity. *Parsons* v. *Wells & al.* 17 *Mass.* 419, and the cases there cited. If the entries of the mortgagees in the present case, after condition broken, were not effectual for the purpose of foreclosure, at an earlier period, there being, as it is contended, no notice, actual or constructive, to the petitioner, their assignees did in *September*, 1828, if not before, take actual possession of the land, which they have continued ever since. A tenant inter-

ested in the estate, although out of possession, if he has a right of entry, may maintain this process, as was decided in the case of *Bailies & al.* v. *Bussey,* 5 *Greenl.* 152, but the petitioner has no right of entry against the respondents, who hold under the mortgagees, nor has he any interest in the estate, which can be recognized at law. And this is decisive of the case, as it is presented to us, against the petitioner.

Whether he has any remedy by a bill in equity, or whether his rights have been foreclosed by the entries first made in behalf of the mortgagees, upon the ground that upon the facts, notice is to be inferred against him, or whether the continued possession of those, who claim under them, since 1828, is to have that effect, are questions which, under this process, it is not necessary for us to decide.

*Petitioner nonsuit.*