F. B. Conrad, Assignee of Thomas Banks, a Bankrupt, *v.* Denis Prieur, Recorder of Mortgages for the Parish of Orleans.

Under the bankrupt act of 19th August, 1841, the District Courts of the United States, sitting in bankruptcy, are vested with all the powers necessary to effect a final settlement and liquidation of the affairs of the bankrupt. Sections 6, 8.

The interest of persons holding mortgages or privileges under the laws of Louisiana on property surrendered by a bankrupt, is an adverse interest touching such property, and under sections 6 and 8 of the bankrupt law of 1841 the District Courts of the United States are vested with power to cite such persons, and to order the erasure of the mortgages and privileges, when necessary for the settlement of the bankrupt estate, and to do justice to the creditors ; and it will be the duty of the Recorder of Mortgages under the State laws, to obey such order.

There are essential differences between the bankrupt law of England and of this country. The former is exclusively a forced proceeding ; the bankrupt is not required, as here, to make a surrender of all his property for the benefit of all his creditors ; a creditor may take no part in the bankrupt proceedings, but retain his remedy in the courts of law. Here, by the law itself, every creditor is made a party to the bankruptcy, all are cited, and an issue is joined between them and the bankrupt, who, in consideration of his surrender, sues for a discharge.

From the nature of the mortgages and privileges allowed by the laws of this State, no settlement of a bankrupt's estate on which such incumbrances exist, could ever be made without reducing the whole estate to cash ; and this can only be done after the property has been released from the incumbrances. Such an estate can only be settled in a *concurso*, contradictorily between all the creditors.

By the laws of this State, both the possession and title of property subject to mortgage, whether conventional, legal, or judicial, remain in the debtor, and the mortgagees are to be paid, according to the dates of the registry of such mortgages in the office of the Recorder of Mortgages, or of the acts giving rise to any legal mortgage, and the mortgage is but an accessary to a principal obligation, and is extinguished with it. C. C. 3374. Most of the privileges recognized by our laws are allowed in view of insolvency, and can be exercised only on the proceeds of the

property surrendered by the debtor.   By the laws of England, and of the other States of the Union, though regarded in equity as a mere security for the debt an l only a chattel-interest, a mortgage transfers the property itself, and vests the legal title in the mortgagee.   Hence, while in England, and the other States, the equity or right of redemption alone passes to the assignee, here, all the property, whether subject to mortgages and privileges or not, becomes a part of the bankrupt's estate, subject to the disposition of the bankrupt court.

A mandamus will be granted by a State court to compel obedience to an order of a District Court of the United States sitting in bankruptcy, directing a Recorder of Mortgages to erase certain mortgages.

APPEAL from the Parish Court of New Orleans, *Maurian*, J.

*Benjamin*, for the plaintiff.

*Roselius* and *Grymes*, for the appellant.

MORPHY, J.   This was an application to the Parish Court of New Orleans by F. B. Conrad, assignee of Thomas Banks, for a mandamus commanding the Recorder of Mortgages of the parish of Orleans, to raise certain mortgages on property of the bankrupt sold by the assignee, in order to give an unincumbered title to the purchasers.   The petitioner represents, that amongst the surrendered property there were sundry valuable tracts of land which had been mortgaged by the bankrupt ; that at the request of the first mortgagees on said property, he applied to the United States District Court for the Eastern District, sitting in bankruptcy, for an order authorizing the sale of the mortgaged premises, and decreeing the erasure of the mortgages recorded against them ; that all the mortgagees holding liens upon the property were thereupon duly cited to oppose this application, if they saw fit so to do ; that no opposition having been filed, a judgment supervened, decreeing the erasure of the mortgages, the sale of the property by the Marshal of the United States for this District, and the reservation to all interested parties, of their respective rights to the proceeds of the sale, when effected ; that a sale having taken place under this decree, the assignee presented to the Recorder of Mortgages a copy of the judgment of the United States Court, and required him to erase the mortgages according to its tenor, and to deliver to him a certificate showing the property to be free from all incumbrances, but that officer refused so to do, alleging that the judgment was invalid and of no legal force, or effect.   After hearing the parties, the inferior Judge

ordered the mandamus to issue, whereupon the Recorder of Mortgages appealed.

The only question which this case presents is one of jurisdiction ; for if the District Court sitting in bankruptcy was competent to cite in the mortgage creditors, and make an order for the erasure of their mortgages, we cannot review its decision, or inquire into its correctness. It had occurred to me, that as the District Court has assumed jurisdiction, and has full authority to compel obedience to its decrees, the Judge below should perhaps have refused to interfere ; but, upon further reflection, I believe that a State court should not withhold the expression of its opinion, when it is legally called for by a State officer, either on his own account, if he wishes to shelter himself from responsibility, or at the instance of purchasers entertaining, as in this case, fears as to the security of their titles, by reason of the supposed want of jurisdiction in the court which ordered the sale. Besides, the Judge below, being of opinion that the District Court of the United States had jurisdiction over the subject matter, may well have considered it incumbent on him to compel the Recorder of Mortgages to fulfil an official duty by means of a mandamus, although the same result could perhaps have been obtained, by application to that court to enforce its decree. As to the parties holding these mortgages, they have already been cited in the United States Court, and have had an opportunity of urging their objections, if they had any, to the erasure of their mortgages, but they have made none. The question is not, whether this erasure has been rightfully ordered, but whether the District Court was competent to order it, and whether it has consequently become an official duty, on the part of the Recorder of Mortgages, to do the act demanded of him by the appellee.

The jurisdiction of the District Court, sitting in bankruptcy, is defined in the sixth and eighth sections of the bankrupt law. In the sixth section, it is declared, " that the District Court, in every district, shall have jurisdiction in all matters and proceedings arising under this act," " the said jurisdiction to be exercised summarily, in the nature of summary proceedings, &c. ;" " and the jurisdiction hereby conferred on the District Court, shall extend to all cases and controversies in bankruptcy, arising between

the bankrupt, and any creditor or creditors who shall claim any debt or demand under the bankruptcy; to all cases and controversies between such creditors and the assignee of the estate, whether in office or removed; to all cases and controversies between such assignee and the bankrupt; and *to all acts matters and things to be done* under, and in virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt, and the close of the proceedings in bankruptcy." In the 8th section we find: " that the Circuit Court within and for the district where the decree in bankruptcy is passed, shall have concurrent jurisdiction with the District Court of the same district, of all suits at law and in equity, which may and shall be brought, by any assignee of the bankrupt, against any person or persons claiming an adverse interest, or by such person against the assignee, touching any property or rights of property of said bankrupt, transferrable to, or vested in, such assignee." The powers given by the first of these two sections appear sufficiently broad to enable that court to do any act which may become absolutely necessary for the settlement of estates thrown into bankruptcy; and the 8th section clothes it with power to decide suits brought by an assignee of the bankrupt, against any person claiming an adverse interest, or by such person against such assignee, touching *property*, or *rights of property* of said bankrupt transferrable to, or vested in such assignee. If it is shown, that the erasure of the mortgages on the property surrendered, is absolutely necessary to settle a bankrupt's estate in Louisiana, and to do justice to the creditors claiming under the bankruptcy, and that the interests of persons holding such mortgages is an adverse interest touching property vested in the assignee, it will follow that, independent of any other provision of the bankrupt law, these two sections vest in the District Court, the jurisdiction it thought proper to exercise.

It seems to be conceded, that the District Court of the United States is not without jurisdiction *ratione materiæ*, when creditors holding mortgages, or other liens, come in voluntarily, and make themselves parties to the proceedings; but it is urged, that they are not bound by the bankruptcy; that they can stand out of it if they choose, and pursue their remedy without reference to such proceedings. An essential difference is believed to exist between

the bankrupt law of England and ours. There, it is exclusively a forced proceeding; the voluntary clause is unknown to it; the bankrupt is not required, as he is, under our law, to make a surrender of all his property to the court, for the benefit of all his creditors; no one is in the bankruptcy who does not elect to go there and receive a dividend. If a creditor chooses, he may keep aloof, and retain his remedy in the courts of law. Here, every creditor seems to be made, by the law itself, a party to the bankruptcy; all are cited, and there is an issue joined between them and the bankrupt, who, in consideration of the surrender, sues them for his discharge. But admitting that this right of election may be implied from the terms of the bankrupt law, and that it is exercised without much inconvenience or difficulty in the other states of the Union; yet its exercise in this State, by reason of the peculiar nature of the liens and mortgages, as constituted by our law, is deemed inconsistent with the rights of the mass of the creditors, and destructive of most of the liens and securities intended to be protected, by the last proviso of the second section of the' act of Congress.

According to our laws, both the possession and the title of property subject to mortgages, whether conventional, legal, or judicial, remain in the debtor, and the creditors holding these several mortgages, are to be paid according to the dates of the registry of their liens in the office of the Recorder of Mortgages, or according to the date of the acts which give rise to a legal mortgage. Of these three kinds of mortgages, two of them, the judicial and the legal, are general, and affect each and every piece of immoveable property owned by the debtor. If the latter sells any por tion of his property, it passes into the hands of the purchaser subject to the amount of the mortgages recorded against the former owner, and the mortgagee can, by a hypothecary action, have the property seized and sold in the hands of the purchaser, unless the latter chooses to free the property by paying the debt. A mortgage, moreover, is, under our law, only an accessary to the principal obligation, and the extinction of the debt carries with it that of the mortgage. Civil Code, Book III, Title 22. As relates to the privileges recognized by our laws, they are most of them allowed only in view of insolvency, and can be exercised

only on the proceeds of the property surrendered by a debtor. These privileges are of different grades and descriptions ; some are general, others are special ; some affect only the moveables of the debtor, some only the immoveables ; and some extend to both moveables and immoveables. From the very nature of these liens and privileges, they can be enforced and settled only in a *concurso*, that is, contradictorily between the several creditors entitled to them. Keeping in view these outlines of our system of mortgages and privileges, let us inquire if the doctrine of election is not wholly inconsistent with it, and would not present an insuperable obstacle to the settlement of a bankrupt's estate in Louisiana.

The act of Congress makes it the duty of the bankrupt, under the penalty of not obtaining his discharge, to place upon his schedule or inventory, all his property without any exception ; and from the date of the decree of bankruptcy, all such property is divested out of the bankrupt, and by force of the same decree, is vested in the assignee appointed by the court. All the property then mortgaged, or subject to privileges, becomes a part of the bankrupt's estate, to be disposed of at such times, and in such manner as may be ordered by the court sitting in bankruptcy, (sec. 9, of the Bankrupt Law) ; while in England and in the other States of the Union, the equity or right of redemption alone, passes to, and vests in, the assignee. It is true, that according to the equity doctrine, the common law mortgage is considered a mere security for the debt, and only a chattel interest ; yet it is a transfer of the property itself, as security for the debt, and a bill in equity is the only remedy of the mortgagor, after payment of the debt, if the mortgagee, having entered, upon the condition being broken, refuses to relinquish the possession. 17 Mass. Rep. 419. 3 Ib. 560. It has been remarked by the appellant's counsel, that though, *in form*, this contract at common law is a sale, it is, *in substance*, nothing else than a mortgage ; but it is *that very form* which makes all the difference, by vesting the legal title in the mortgagee. This mortgage has some analogy to the contract of sale, with a right of redemption, which is sometimes made in this State, by way of security for the loan of money to be returned within a given time. This contract is also in substance a mort-

gage ; but being in the form of a sale, the property could not be carried into the bankruptcy against the will of the vendee, nothing but the mere right of redemption being transferred to the assignee ; hence, it is necessary for the latter to redeem the property, in order to bring it back into the bankrupt's estate. If he does not, the mortgagee, or vendee under a clause of redemption, has nothing to do with the bankruptcy, and may keep out of it. " Thus," says Blackstone, in his Commentaries, 2d vol. p. 487, " mortgages for which the creditor has a real security in his hands, are entirely safe, for the commission of bankrupt reaches only the equity of redemption. So are also personal debts, when the creditor has a chattel in his hands, as a pledge or pawn for the payment, or has taken the debtor's lands, or goods in execution." Under such circumstances, I can well understand, that the right of election may exist, but where, as in this State, the mortgaged property itself goes into the bankruptcy, it appears to me, that the creditors can have no election, but must follow their pledge, and seek their payment out of its proceeds. From the nature of our general mortgages, and the conflicting privileges existing under our laws, upon an estate surrendered by a bankrupt, it must be obvious to every one, that no settlement can take place, unless the whole estate is reduced to cash ; and that this result cannot be obtained, until the property is released from all the incumbrances bearing upon it. All persons, then, holding such mortgages may well be considered, within the meaning of the eighth section, as having an adverse interest touching the property vested in the assignee. They have the *jus in re*, which Pothier tells us, in his treatise *Du Droit de Domaine de Propriété*, is the right which we have in a thing, by which it belongs to us, at least for certain purposes, (*au moins à certains égards*,)—vol. viii. chap. 1, No. 1, p. 111. " *Il y a*," says he, " *plusieurs espèces de* jus in re, *qu'on appelle aussi* droits réels. *La principale est le droit de domaine de propriété. Les autres espèces de droits réels, qui émanent de celui-ci, et qui en sont comme des démembremens*," *&c.* Among such proprietary rights, he mentions the right of mortgage. Pothier, *loco citato*, No. 2.

This right which the mortgagees have in the property vested in the assignee, is evidenced under our law by an inscription, or

registry on the books of the Recorder of Mortgages, which, un-
less erased, would prevent the sale of the bankrupt's property,
and, consequently, the settlement of the estate.   It constitutes,
therefore, to my view, such an adverse interest as is contempla-
ted by the eighth section of the law, and upon which the assignee
was authorized to bring suit.   This section, and the sixth, were
clearly intended to clothe the District Court, sitting in bankrupt-
cy, with all the powers necessary to effect a final settlement and
liquidation of the affairs of the bankrupt.   Upon the whole, I have
come to the conclusion that the District Court of the United States
acted within the scope of its jurisdiction, and had full authority to
make the order, which it did, to the Recorder of Mortgages, and
that the latter, in the performance of his official duties, was
bound to obey such order, and erase the mortgage in question.

In corroboration of this view of the subject, the counsel for the
assignee has called our attention to the last proviso of the second
section of the bankrupt act.   It is in these words : " that nothing
in this act contained shall be construed to annul, destroy, or im-
pair any lawful rights of *married women*, or *minors*, or any liens,
mortgages, or other securities on property, real or personal, which
may be valid by the laws of the States respectively, and which
are inconsistent with the provisions of the 2d and 5th sections of
this act."   It is said, that although this proviso is general in its
terms, it was inserted at the instance of the Louisiana delegation
in Congress, in view of the difficulties which would inevitably
have attended the operation of the bankrupt law in this State, in
consequence of the peculiar character of our privileges and mort-
gages.   Its express object, it is contended, was to secure to the
persons therein mentioned, and others *similarly situated* in Louisi-
ana, the right of being paid out of the proceeds of the property
subject to their privileges and mortgages, as they were under the
State law, and therefore, to authorize every thing which was ne-
cessary to attain that end.   Such appears to have been the con-
struction given to this proviso of the law, by the United States
District Court in this District.   Its rules and regulations have
been made in accordance with this construction.   Mortgaged pro-
perty, to an immense amount, has been sold under it, and the rights
of the privileged and mortgage creditors have been allowed and

recognized to exist, as they stood under the State law. In con clusion, I must say, that even if I had any doubt on the subject, I would not put upon the act of Congress a different construction from that given to it by the District Court, whose decision is final. In relation to the mutual respect, which, in my opinion, the Federal and State courts should show for the decisions of each other, the Supreme Court of the United States have said: "the judicial department of every government, where such department exists, is the appropriate organ for construing the legislative acts of that government. Hence, the construction given by this court to the constitution and laws of the United States, is received by all as the true construction; and hence, the construction given by the courts of the several States to the Legislative acts of those States, is received by us as true, unless they come in conflict with the constitution, laws, and treaties of the United States." 10 Wheaton, 160. See also 16 Johnson, 248. 17 ibid. 108.

SIMON, J.* I concur in opinion with my colleague, Judge MORPHY, and conclude that the judgment of the Parish Court ought to be affirmed, with costs.

GARLAND, J. For the reasons stated in the opinion read by Judge MORPHY, and for those stated in an opinion which I have prepared in the case of *Clarke, assignee of Zabriskie* v. *Rosenda and another, ante,* p. 27, I concur in the opinion, that the judgment of the Parish Court should be affirmed.

BULLARD, J., dissenting. I must content myself with express= ing my dissent, not having strength to develope, at any length, the reasons on which it is founded. My views, generally, in re lation to the late bankrupt law, are expressed at length in the case of *Clarke, assignee,* v. *Rosenda and another, ante,* p. 27. This case, it appears to me, presents a dilemma. Either the Uni- ted States Court, sitting in bankruptcy, has, or it has not, plenary jurisdiction over the whole subject of mortgages, and has a right to decide on the rights of mortgagees. If it has, then it follows, that that court may order evidences of mortgages to be erased; and may direct the Recorder, as a ministerial officer, to perform

---

* MARTIN, J., did not sit on the trial of this case.

the act. Upon that supposition, what has a State tribunal to do with the matter ? Since when have the State courts become the auxiliaries of the federal tribunals, and been expected to play so poor a part, as to lend their aid blindly, in registering their decrees and ordering State officers to carry them into effect. I find nothing of this kind in the constitution, or jurisprudence of the United States.

Again : if we are to pronounce ourselves upon the right of se-cond mortgagees, and upon the authority of the Recorder to ef-face from the record the evidence of their rights, then it must be done with proper parties before us—*auditis audiendis*. Who are the parties before us ? None other, as I understand it, than the as-signee and the Recorder of Mortgages. None of the parties, whose rights are to be affected by this proceeding, are before us ; nor have they had an opportunity to be heard, by forming a *contesta-tio litis*. In the case of *Gasquet* v. *Dimitry*, we refused to order the Sheriff to erase the mortgage, without hearing the mortgagee. Our venerable senior, who does not sit in this case, delivered the opinion of the court in that. 6 La. 453.

Does the Recorder of Mortgages wish to shelter himself be-hind the authority of this court, he must bring with him those whose rights are to be affected by the act required to be done by him. Otherwise, it is clear the mortgagees would not be preclu-ded, either by his acts, or even by the judgment of this court. The Recorder of Mortgages does not represent those whose mort-gages are inscribed upon his register. If the mortgagees had been made parties in the Parish Court, they might have denied the existence of any judgment in the District Court of the United States against them. They might have shown, that the proceed-ings on the part of the first mortgagees were illegal and void, and that, consequently, their rights are not to be impaired. In fine, they might have placed their case in such a form before the court, claiming under the act of Congress to have their rights as mort-gagees secured and protected, as, in the event of a judgment here, in the highest State court, against them, they might have prose-cuted a writ of error to the Supreme Court of the United States. Instead of that, what have we ? An assignee of a bankrupt, who asserts in his favor a judgment of the Bankrupt Court, and a Re-

corder of Mortgages, who has no more interest in the case than the clerk of this court, and who has not, in relation to mortgagees, any *facultas standi in judicio.* I cannot consent to aid in such a proceeding, in which, we either merely carry into effect the judgment of a court of the United States, or decide upon important questions without having before us, as parties, those whose interests and rights are to be affected by our judgment.

My opinion, therefore, is, that the judgment of the Parish Court should be reversed.

*Judgment affirmed.*